The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: March 31 2014

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 12-32463 |
| | ) | |
| Belinda M. Brooks, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

**MEMORANDUM OF DECISION REGARDING MOTION TO AVOID LIEN**

This case came before the court for evidentiary hearing on Debtor's Motion to Avoid Lien Under 11 U.S.C. § 522(f) ("Motion"), [Doc. # 36], and Creditor Kathleen Hughes' response, [Doc. # 39]. The court held an evidentiary hearing on the Motion that Debtor, Debtor's counsel, Creditor and Creditor's counsel all attended in person.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. The Motion is a core proceeding that this court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(K) and (O).

Debtor seeks to avoid a judicial lien in the amount of $171,992.42 obtained by Creditor against Debtor's interest in her residential real estate. For the reasons that follow, Debtor's Motion will be granted.

**FACTUAL BACKGROUND**

Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on May 25, 2012. She received a discharge and the case was closed on September 20, 2012. On May 23, 2013, the court granted Debtor's motion to reopen the case for the purpose of filing the instant motion to avoid Creditor's judicial lien. According to Debtor, the lien impairs an exemption claimed by her on her bankruptcy Schedule C under Ohio Revised Code § 2329.66(A)(1)(b) in the amount of $21,625.00. There is no dispute as to the amount of the judicial lien, which was filed on May 22, 2012, in the Wood County, Ohio, Court of Common Pleas, as Judgment Lien No. 2012JL0601, or Debtor's entitlement to the exemption claimed on Schedule C. [Doc. # 46, ¶ 3]. And there is no dispute that as of the petition filing date, the value of Debtor's residential real estate was $135,000.00. [Doc. 54, ¶ 4]. The parties disagree, however, as to whether a valid and enforceable mortgage encumbered the real estate on the date of filing for purposes of applying the exemption impairment formula in 11 U.S.C. § 522(f). *See* 11 U.S.C. § 522(f)(2)(A). In support of their respective positions on that issue, the parties offered testimony and documentary evidence at the hearing on the Motion.

On October 30, 2007, Debtor executed a promissory note ("Note") in favor of Lehman Brothers Bank, FSB, ("Lehman Brothers Bank") in the amount of $156,750.00. [Debtor Ex. B, attached Ex. C].[1] Also on that date, Debtor signed a mortgage ("Mortgage") that named Mortgage Electronic Registration Systems, Inc., ("MERS") as the mortgagee, "acting solely as a nominee for Lender," Lehman Brothers Bank. [*Id.*, attached Ex. D]. The Mortgage provides that "[t]his Security Instrument secures to Lender (i) the repayment of the loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note" and that "[f]or this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS" the property that is Debtor's residential real estate. [*Id.* at 3]. It further provides that "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument. . . ." *Id.*

The Note was endorsed by Lehman Brothers Bank to Lehman Brothers Holding Inc., which

---

[1] The parties stipulated to the authenticity and admissibility of docket sheets, pleadings, orders, and documents filed in the following prior legal proceedings: *Aurora Loan Services, LLC v. Brooks*, Case No. 2010CV0583 in Wood County, Ohio, Common Pleas Court; *Brooks v. Lehman Brothers Bank,* Case No. 2011CV0498 in Wood County, Ohio, Common Pleas Court and removed to the United States District Court for the Northern District of Ohio, Case No. 3:11-cv-01455; and *Wells-Fargo Bank National Association, Trustee v. Brooks*, Case No. 2013CV0524 in Wood County, Ohio, Common Pleas Court.

subsequently endorsed the Note to Aurora Loan Services LLC ("Aurora Loan Services"). [Debtor Ex. B, attached Ex. C, p. 3]. The Note was then endorsed in blank by Aurora Loan Services. [Creditor Ex. 14, Ex. B]. The endorsements are not dated.

On June 22, 2010, MERS, as nominee for Lehman Brothers Bank, executed an Assignment of Mortgage to Aurora Loan Services, which states that it assigns the "Mortgage together with the Note or other evidence of indebtedness ("the Note"), said Note having an original principal sum of $156,750.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof. . ." and which was recorded with the Wood County Recorder on June 28, 2010. [Debtor Ex. B, attached Ex. E]. On March 20, 2012, Aurora Loan Services LLC executed an Assignment of Mortgage to Aurora Bank FSB ("Aurora Bank"), [Creditor Ex. 11, attached exhibit at unnumbered pp. 3-4 of Ex. 11], and on March 27, 2012, Aurora Bank executed an Assignment of Mortgage to Selene Finance LP, [*Id.* at unnumbered pp. 5-6]. Neither the assignment to Aurora Bank nor the assignment to Selene Finance refer to, or purport to assign, the Note. [*Id.* at pp. 3-6]. Finally, on December 17, 2012, Selene Finance LP executed an Assignment of Mortgage to Wells Fargo Bank as trustee for SRMOF II 2011-1 Trust ("Wells Fargo"). [*Id.* at unnumbered pp. 7-9]. The assignment to Wells Fargo states that it assigns Selene Finance's beneficial interest under the Mortgage "[t]ogether with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Document." [*Id.* at 7]. The three assignments executed in 2012 were each recorded with the Wood County Recorder on January 7, 2013. [*Id.* at 3, 5, & 7].

Although the record does not reflect the exact amount owed on the Note on May 25, 2012, the date Debtor's petition was filed, the court credits her testimony that the principal owed has never been less than $150,000.00. [*See also id.*, attached Ex. B, Santoro Aff. ¶11, stating that on April 5, 2012, the principal balance owed on the Note was $153,476.54]. Debtor testified that no payments on the Note have been made since May 2010. According to Debtor, she obtained a loan modification and made all payments under the terms of the loan modification until May 2010 when a foreclosure action was nevertheless filed by Aurora Loan Services in the Wood County, Ohio, Court of Common Pleas ("State Court"). The 2010 foreclosure action was dismissed without prejudice on December 27, 2012. [*See* Creditor Ex. 2, p. 24].

During the pendency of that foreclosure action, Debtor filed an action in State Court against Lehman Brothers Bank, MERS and Aurora Loan Services seeking a declaration that they did not possess an interest in the Note and Mortgage ("Declaratory Action"). [Creditor Ex. 12]. The Declaratory Action was removed

3

to the United States District Court for the Northern District of Ohio on July 15, 2011. [*See* Creditor Ex. 4]. On February 14, 2012, the district court dismissed the case, declining to exercise jurisdiction over the Declaratory Action and denying as moot a pending motion to dismiss for failure to state a claim. [*Id.* at 5].

On September 13, 2013, after Debtor's bankruptcy case was closed and before it was reopened, Wells Fargo commenced a foreclosure action in State Court. [Creditor Ex. 5]. That case was dismissed without prejudice on October 4, 2013, after this case was reopened. [*Id.* at 4].

## LAW AND ANALYSIS

As indicated above, Debtor's Motion seeks to avoid pursuant to § 522(f) a judicial lien in the amount of $171,992.42 obtained by Creditor against Debtor's interest in her residential real estate. Debtor contends that Creditor's judicial lien impairs her homestead exemption and should be avoided in full. Creditor opposes the Motion, arguing (1) that the Mortgage is not a valid mortgage and should not be used in calculating the extent to which Debtor's lien impairs her exemption, (2) that judicial estoppel precludes Debtor from asserting the validity of the Mortgage, and (3) that equitable principles otherwise bar her from asserting the validity of the Mortgage. For the reasons that follow, the court will grant Debtor's Motion.

### I. 11 U.S.C. § 522(f)

Section 522(f) of the Bankruptcy Code provides in relevant part as follows:

> (1) Notwithstanding any waiver of exemptions, . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is –
>     (A) a judicial lien . . . .

11 U.S.C. § 522(f)(1). A judicial lien such as Creditor's is considered to impair an exemption to the extent that the sum of the lien, all other liens on the property, and the amount of the exemption that the debtor could claim if there were no liens on the property exceeds the value that the debtor's interest in the property would have in the absence of any liens. 11 U.S.C. § 522(f)(2). The existence of a mortgage that constitutes a lien within the meaning of § 522(f) is, therefore, critical to the calculation required to determine the extent of any impairment of Debtor's homestead exemption. The operative date for all § 522(f) determinations, including determinations regarding the value, and thus the existence, of liens, is the petition filing date. *See Wilding v. CitiFinancial Consumer Final Servs., Inc. (In re Wilding)*, 475 F. 3d 428, 432 (1st Cir. 2007); *In re Young*, 471 B.R. 715, 719 (Bankr. E.D. Tenn. 2012). As the party seeking to avoid the lien, Debtor bears the burden of proof by a preponderance of the evidence. *See In re Lee*, 249 B.R. 864, 867 (Bankr.

4

12-32463-maw    Doc 57    FILED 03/31/14    ENTERED 03/31/14 11:47:46    Page 4 of 10

N.D. Ohio 2000).

## II. Existence of Valid Mortgage Lien

The Bankruptcy Code defines "lien" to mean "charge against or interest in property to secure payment of a debt . . . ." 11 U.S.C. § 101(37). While the definition of "lien" is a matter of federal law, the issue of whether a particular mortgage is a "charge against or interest in property to secure payment of a debt" is a matter of state law. *In re Smith*, 315 B.R. 636, 640 (Bankr. D. Mass. 2004) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)). Under Ohio law, [2] "a mortgage is a conveyance of property to secure the performance of some obligation, which is designed to become void upon due performance thereof." *CitiMortgage, Inc. v. Guthrie*, 175 Ohio App. 3d 115, 118-19 (2008) (citing *Brown v. First Nat'l Bank,* 44 Ohio St. 269, 274 (1886)). Thus, to the extent that the Mortgage granted by Debtor is valid, it constitutes a lien within the meaning of § 101(37).

In *Gemini Services, Inc. v. Mortgage Electronic Registration Systems, Inc. (In re Gemini Services, Inc.*), 350 B.R. 74 (Bankr. S.D. Ohio 2006), the court addressed Ohio law concerning notes and mortgages. A Chapter 11 debtor-in-possession had filed a complaint to determine the validity of a mortgage against its business property. *Id.* at 76. The original lender had indorsed the promissory note executed by the debtor to Del Norte Refi, LLC, but assigned the mortgage granted by the debtor to MERS. *Id*. at 77. The court found that, although the legal interest in the mortgage was assigned to MERS, the assignment was for the limited purpose of MERS acting as the agent for Del Norte, notwithstanding the fact that the assignment was silent as to any agency relationship. *Id.* at 80, 82. Thus, the court found that MERS held legal title to the mortgage, but that Del Norte held the beneficial interest in the mortgage, such that a valid lien continued to exist. *Id.* at 82. The court relied upon the following explanation set forth in *Kernohan v. Manss*, 53 Ohio St. 118, 133 (1895):

> 1. Where a promissory note is secured by mortgage, the note, not the mortgage, represents the debt. The mortgage is, therefore, a mere incident, and an assignment of such incident will not, in law, carry with it a transfer of the debt. On the other hand, a transfer of the note by the owner, so as to vest legal title in the indorsee, will carry with it equitable ownership of the mortgage. And so, if the debt be evidenced by several promissory notes, the legal transfer

---

[2] Ohio law applies when determining issues as to the validity and enforceability of liens on Ohio real estate. *In re Presser,* 504 B.R. 452, 455 (Bankr. S.D. Ohio 2014); *see also* Debtor's Ex. D, Mortgage, p. 11, ¶ 16, "Governing Law" (designating "federal law and the law of the jurisdiction in which the Property is located" as the governing law for construction of the Mortgage).

5

of a portion of the notes carries with it such proportional interest in the security as the notes transferred bear to the whole.

2. Being but an incident of the debt, the mortgage remains, until foreclosure or possession taken, in the nature of a chose in action. Where given to secure notes, it has no determinate value apart from the notes, and, as distinct from them, is not a fit subject of assignment. And, where the notes are legally transferred, the mortgagee, and all claiming under him, will hold the mortgaged property in trust for the holder of the notes.

(internal citations omitted).

In this case, the court initially notes that there is no evidence or suggestion that the Mortgage was not properly executed. *See* Ohio Rev. Code § 5301.01(A) (requiring a mortgage to be signed by the mortgagor and acknowledged by the mortgagor before a notary public, who must certify the acknowledgment and subscribe his or her name to the certificate of acknowledgment). Rather, Creditor argues, without citation of any authority, that the original Mortgage granted to MERS is not valid because it was not founded upon any obligation owed to MERS. While it is true that the Note secured by the Mortgage was executed in favor of Lehman Brothers Bank, not MERS, the Mortgage was granted to MERS not in its own right but as nominee, or agent, for Lehman Brothers Bank and its successors and assigns. The Mortgage identifies the Lender as Lehman Brothers Bank and states that it "secures to Lender," the repayment of the Loan. [Debtor's Ex. B, attached Ex. D, p. 3]. It further states that MERS holds only legal title to the interest granted by Debtor. Under the reasoning of *Gemini Services, Inc.* and *Kernohan*, Lehman Brothers Bank held the beneficial interest in the mortgage at the time it was executed by Debtor such that there was no separation of the note and mortgage that would render it invalid. *See Bank of America, N.A. v. Pasqualone*, No. 13AP-87, 2013 WL 6869954, *10-11, 2013 Ohio App. LEXIS 6085, *38-40 (Ohio App. Dec. 31, 2013) (rejecting argument that note and mortgage were separated when the note identified MFC Mortgage, Inc., as lender and MERS as the mortgagee, acting solely as nominee for lender); *cf. BAC Home Loans Servicing, L.P. v. Haas*, No. 9-13-40, 2014 WL 538668, *5 (Ohio App. Feb. 10, 2014) (citing cases and stating that Ohio courts have consistently held that MERS has authority to assign a mortgage when it is designated as nominee and mortgagee).

Creditor also argues that the Mortgage is not valid because, on the date Debtor filed her petition, no entity had standing to enforce the Mortgage. However, Creditor conflates the determination of who may enforce a mortgage with the existence of the mortgage itself.

Creditor first argues that Aurora Loan Services' assignment of the Mortgage and the assignments

that occurred thereafter were not recorded and, therefore, the assignees' interest in the Mortgage were not perfected, until after Debtor filed her bankruptcy petition. However, the Ohio recording statutes applicable to assignments of mortgages do not govern the validity of the underlying mortgage. *Noland v. Wells Fargo Bank, N.A. (In re Williams)*, 395 B.R. 33, 42-43 (Bankr. S.D. Ohio 2008); *Wead v. Lutz*, 161 Ohio App. 3d 580, 584 (2005) ("The validity of the mortgage itself remains unaffected by the timing of the assignment's recordation."). "[T]he issue of when the mortgage assignment was recorded becomes relevant only to the extent of establishing creditor priority and subsequent notice to a bona fide purchaser of the land." *Wead*, 161 Ohio App. 3d at 584; *see Bank One, N.A. v. Dillon*, No. 04CA008571, 2005 WL 956966, *2, 2005 Ohio App. LEXIS 1852, *5 (Ohio App. April 27, 2005) (holding that the "failure or success of recording an instrument has no effect on its validity as between the parties to that instrument").

Creditor next argues that, under *Federal Home Loan Mortgage Corp. v. Schwartzwald*, 134 Ohio St. 3d 13 (2012), no entity had standing to enforce the mortgage as of the filing date of the petition. Creditor reads *Schwartzwald* too broadly. In that case, the sole issue addressed by the court was whether a particular entity had standing to bring a foreclosure action against the mortgagors. Federal Home Loan had commenced a foreclosure action before it had any interest in the promissory note or mortgage. *Id.* at 15, 19. The lower court had entered a decree of foreclosure, finding that Federal Home Loan had remedied its lack of standing when it obtained an assignment of the note and mortgage. *Id.* at 14. The Ohio Supreme Court reversed and dismissed the case, holding that the assignment subsequent to the filing of the foreclosure action did not cure a lack of standing. *Id.* at 14. However, the court emphasized that the "dismissal has no effect on the underlying duties, rights, or obligations of the parties." *Id.* at 22-23. Nothing in *Schwartzwald* stands for the proposition that because an entity lacks standing to foreclose on a mortgage, the mortgage is invalid.

Under the facts of this case and the reasoning of *Gemini Services, Inc.* and *Kernohan*, Aurora Loan Services, to whom the Note had been specifically indorsed, or whoever Aurora Loan Services had transferred the Note to,[3] not only had an interest in the Note but also had, at a minimum, a beneficial interest in the Mortgage. Thus, to the extent that Wells Fargo, the final assignee of the Mortgage, did not also have possession of the Note, it held the Mortgage for the limited purpose of acting as the agent for the holder of

---

[3] The court notes that Aurora Loan Services subsequently indorsed the Note in blank. The record is silent, however, as to whether it also transferred the Note to another party. *See* Ohio Rev. Code § 1303.22 (A) ("An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.")

7

the Note, such that a valid lien continues to exist. *See Gemini Services, Inc*, 350 B.R. at 80, 82; *Kernohan*, 53 Ohio St. at 133; *see also Brown v. First Nat'l Bank of Hamilton*, 44 Ohio St. 269, 274 (1886) (stating that "[i]t is a familiar principle that, whatever changes the evidence of a mortgage debt may undergo, or into whosesoever hands it may pass, the mortgage security still attaches to it and remains an incident of it until it is discharged."). The court finds Creditor's first argument unavailing.

### III. Judicial Estoppel

Creditor also argues that Debtor is equitably estopped from asserting the validity of the Mortgage since she asserted a different position in the Declaratory Action filed in State Court and removed to District Court and since she states on her bankruptcy schedules that the mortgage is disputed. The Sixth Circuit has explained the equitable doctrine of judicial estoppel as follows:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who acquiesced in the position formerly taken by him. Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment. The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition.

*Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008).

In this case, Debtor has not asserted a position contrary to the position asserted by her in the Declaratory Action. Here she simply asserts the existence of the Mortgage. By contrast, in the Declaratory Action, Debtor sought a determination that particular entities, namely, MERS and Aurora Loan Services, have no interest in the Note and Mortgage. She did not assert that the Mortgage itself was invalid. Rather, Debtor alleged that certain "holders of mortgage-backed Certificates owning a pro rata share of [Debtor's] Note are the only parties entitled to enforce [the Mortgage]." [Creditor's Ex. 12, ¶ 91]. In addition, neither the State Court, the District Court nor this court have previously adopted any position of Debtor regarding the Mortgage, either as a preliminary matter or on a final disposition. The District Court dismissed the Declaratory Action, declining to exercise jurisdiction, and denied as moot the motion to dismiss for failure to state a claim. Although Creditor directs the court to an order entered by the State Court referring the Declaratory Action to mediation, nothing in that order indicates that any party's position was preliminarily adopted. [*See* Creditor's Ex. 8].

Creditor also argues that equity bars Debtor from unjust enrichment by asserting the validity of the

8

12-32463-maw    Doc 57    FILED 03/31/14    ENTERED 03/31/14 11:47:46    Page 8 of 10

Mortgage in this case in order to avoid Creditor's judgment lien and later returning to State Court and requesting the same relief sought by her in the Declaratory Action. However, as discussed above, the relief sought in the Declaratory Action involved declaring that certain parties were not the proper parties to enforce the Mortgage, it did not involve declaring that the Mortgage is invalid. Although Debtor may now be estopped, collaterally or otherwise, from challenging the validity of the Mortgage in a subsequent State Court proceeding, that determination must be made by the State Court.

### IV. Application of § 522(f) Impairment Formula

As previously stated, under § 522(f), a lien is considered to impair an exemption to the extent that the sum of the lien, all other liens on the property, and the amount of the exemption that the debtor could claim if there were no liens on the property exceeds the value that the debtor's interest in the property would have in the absence of any liens. 11 U.S.C. § 522(f)(2). Debtor has claimed a homestead exemption on Schedule C in the amount of $21,625 under Ohio Revised Code § 2329.66(A)(1), as applicable on the date her petition was filed. There is no dispute as to Debtor's entitlement to the exemption claimed.

And although the record does not reflect the exact amount owed on the Note as of the date the petition was filed, for purposes of the § 522(f) calculation, the court will consider the amount owed to be at least $150,000.00, as Debtor credibly testified. Although Creditor argues that Debtor's statement in her Motion to Reopen Case that the lender has offered significant assistance in an effort to resolve foreclosure litigation bears upon a reduction of the mortgage amount, Debtor testified that such assistance has occurred since she received her Chapter 7 discharge, [Doc. # 28, p. 1]. Thus, any such assistance is not relevant to the amount owed on the Note on the date she filed her Chapter 7 petition, which is the relevant date to consider under § 522(f). Creditor also argues that Debtor included on her bankruptcy Schedule B a potential counterclaim against Aurora Loan Services valued at $31,000 that bears upon an offset of the mortgage amount. However, Debtor's potential counterclaim does not reduce the amount secured under the Mortgage. Moreover, even considering such a reduction, as shown below, the ultimate outcome in this matter would be no different.

Applying the formula set forth in § 522(f) to the facts in this case, Debtor's exemption is impaired to the extent that the sum of all liens plus her exemption exceed the value of Debtor's property if there were no liens on the property:

| | |
|---|---:|
| Creditor's judgment lien: | $171,992.42 |
| Mortgage: | 150,000.00 |
| Exemption: | <u>21,625.00</u> |

9

|  |  |
|---|---|
| Total | $343,617.42 |
| Less the value of Debtor's unencumbered home: | 135,000.00 |
| Impairment: | $208,617.42 |

Because the $208,617.42 amount of the impairment exceeds the $171,992.42 amount of Creditor's judgment lien that Debtor seeks to avoid, Debtor has met her burden of proof and Creditor's lien is avoidable in full.[4] *See Holland v. Star Bank. N.A. (In re Holland)*, 151 F.3d 547, 550 (6th Cir. 1998).

A separate order in accordance with this Memorandum of Decision will be entered.

###

---

[4] To the extent that Debtor's $31,000.00 potential counterclaim is treated as reducing the mortgage amount, the amount of the impairment would be $177,617.42 ($208,617.42 minus $31,000.00), an amount still greater than Creditor's $171,992.42 judgment lien.